487 So.2d 695 (1986)
STATE of Louisiana
v.
Byron NELSON and Keith Brown.
No. 85-KA-727.
Court of Appeal of Louisiana, Fifth Circuit.
April 14, 1986.
Daniel T. McKearan, Jr., Harahan, for defendant-appellant Keith T. Brown.
John H. Craft, Staff Appellate Counsel Indigent Defender Bd., Gretna, for defendant-appellant Byron Nelson.
Dorothy A. Pendergast, Asst. Dist. Atty., Gretna, for State.
Before KLIEBERT, BOWES and GRISBAUM, JJ.
BOWES, Judge.
Defendants-appellants, Byron Nelson and Keith Brown, were charged by a bill of information, on January 4, 1985, with simple burglary (a violation of La.R.S. 14:62). The case was tried to a six-person jury on March 18 and 19, 1985, at the close of which both defendants were found guilty as charged. Thereafter, a presentence investigation report was ordered.
On June 19, 1985, defendant Brown was sentenced to seven years at hard labor. Defendant Nelson was sentenced to four years at hard labor. Execution of Nelson's sentence was suspended and he was placed *696 on active probation for five years with the following conditions:
(1) Pay a fine of $2,000.00 (to I.D.B.) plus court costs totaling $205.00;
(2) Obtain a G.E.D. under the direction and supervision of the Department of Probation;
(3) Serve two years in the Jefferson Parish Correctional Center; and
(4) Pay $10.00 per month in supervision fees to the Department of Public Safety and Corrections.
It is from the above convictions and sentences that the defendants seek relief on appeal.
Defendant Byron Nelson assigns the following errors on appeal:
ASSIGNMENT OF ERROR NO. 1
The trial court erred in denying defendant's Motion in Arrest of Judgment and Motion for Judgment of Acquittal Or In the Alternative for Modification of Verdict
ASSIGNMENT OF ERROR NO. 2
The trial court erred in denying defendant's Motion for New Trial.
ASSIGNMENT OF ERROR NO. 3
The trial court erred in denying defendant's motion for a mistrial after the six member [jury] returned a non-unanimous verdict.
ASSIGNMENT OF ERROR NO. 4
Also assigned as error are any and all errors patent on the face of the record.
Defendant Keith Brown assigns the following errors:
ASSIGNMENT OF ERROR NO. 1
The court refused motion for a mistrial when Officer Geisinger plainly intimated that there was an existing Arrest Warrant for Keith Brown, in an unrelated matter, which was clearly prejudicial to the defendant.
ASSIGNMENT OF ERROR NO. 2
State failed to prove every element of crime, as unauthorized entering and intent to commit a felony.
ASSIGNMENT OF ERROR NO. 3
The jury's verdict is contrary to the law and evidence and is contrary to the dictates of Jackson v. Commonwealth of Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, deprives the defendant of his rights under the 5th and 14th Amendment to the Constitution of the United States in due process clauses thereof; and further contrary to the Law of the State of Louisiana Article 1, Sections 2 & 3, and the due process clauses thereof. Defendant complains that the State's evidence was insufficient to prove every element of the crime and overall the evidence when considered in its entirety, presented by both State and defendant, failed to establish the guilt of defendant beyond reasonable doubt, contrary to the ruling in Jackson v. Commonwealth of Virginia, 99 S.Ct. 2781, "That no reasonable, rational trier of facts should find the defendant guilty under this circumstance and evidence."
ASSIGNMENT OF ERROR NO. 4
Court's failure to grant a mistrial when jury returned a verdict of less than unanimous vote of guilty.
Appellant Nelson's assignments numbers one and two and appellant Brown's assignments two and three all question whether the evidence presented at trial was sufficient to support the guilty verdict returned against them. Therefore, we address these errors together.
About midnight, December 15, 1984, an officer of the Kenner Police Department, on routine patrol, observed a black male standing on the corner of Oxley Street and Airline Highway, just outside the fence of The Trading Post, a used car lot. The subject, Byron Nelson, watched as Officer Geisinger drove around the corner. Because it was late on a cold, damp, night and no businesses were open in the vicinity, the *697 officer was suspicious and drove around the block. Returning, he discovered that Nelson was no longer standing on the corner but walking down Oxley Street, which runs parallel to The Trading Post fence. A second black male (later identified as Keith Brown) had joined Nelson.
As Officer Geisinger drove up behind the subjects, he noticed that Brown was carrying several car keys with white tags. The subjects stopped and, as the officer exited his patrol car, Brown dropped the keys to the ground. Geisinger directed his flashlight on the keys and discovered that the tags were of a distinctive type used by car dealerships. As The Trading Post was a used car dealership, the officer felt that further investigation was necessary and called for assistance. Officer William Mouret responded and detained the subjects while Geisinger entered the locked compound by jumping the fence. He discovered a window and frame on the west wall of the main office had been forcibly removed and footprints on the carpeted floor just inside the window.
Tom Wilkinson, the owner of The Trading Post, was notified and, upon arrival, he identified the keys dropped by Brown as some of those kept in a drawer in the main office. Wilkinson also reported that a television and a public address system were missing from the office and a 1973 Buick was missing from the lot. The latter items were never connected to the defendants, nor were they recovered.
We find two things in Mr. Wilkinson's testimony at trial to be noteworthy: (1) Neither he nor his partner was able to produce a key to the locked gate of The Trading Post, necessitating that the lock be cut in order to gain entrance to the premises; and (2) at trial, Wilkinson could only identify one key, found on the ground next to the defendants, as belonging to a car that had been in The Trading Post's inventory.
The Louisiana Supreme Court, in State v. Camp, 446 So.2d 1207 (La.1984), stated:
La. Const. Art. V, Sections 5 and 10 (1974) limit the jurisdiction of the Supreme Court of Louisiana and of the courts of appeal in criminal cases to questions of law. Whether the evidence is sufficient to support a conviction is a question of law, although the determination of this question necessarily involves a review of the record evidence. The standard for performing this review, mandated in Jackson v. Virginia, above, is that the reviewing court must determine that the record evidence, viewed in the light most favorable to the prosecution, is sufficient to convince a rational juror that the defendant is guilty beyond a reasonable doubt of the crime of which he has been convicted.
The due process clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every element of the crime with which he is charged. In Re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The Jackson decision imposed the `rational juror' standard for reviewing the jury's determination that the evidence constituted proof beyond a reasonable doubt. [footnote omitted]
The standard for appellate review mandated by the United States Supreme Court also applies in cases which involve circumstantial evidence. The United States Supreme Court has rejected a contention that the trial judge is constitutionally required to instruct the jury that circumstantial evidence must exclude every reasonable hypothesis other than that of guilt. Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed.2d 150 (1954); see also Jackson v. Virginia, above, footnote 9. The Court stated that `the better rule is that where the jury is properly instructed on the standards for reasonable doubt, such an additional instruction on circumstantial evidence is confusing and incorrect.' 348 U.S. at 139, 75 S.Ct. at 137.
La.R.S. 15:438 provides the following rule for circumstantial evidence in Louisiana:

*698 `The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.'
Therefore, [...] the standard of appellate review of a conviction is the same in all cases, whether or not circumstantial evidence is involved: The evidence, viewed in the light most favorable to the prosecution, must be sufficient for a rational juror to conclude beyond a reasonable doubt that defendant is guilty of the crime. [...] [W]hen the overall evidence, direct and circumstantial, does not exclude a reasonable hypothesis of innocence, there exists a reasonable doubt as to guilt. [footnote omitted]
The defendants were convicted of simple burglary, in violation of R.S. 14:62, which provides in pertinent part that "[s]imple burglary is the unauthorized entering of any dwelling, vehicle, watercraft, or other structure, movable or immovable, with the intent to commit a felony or any theft therein...." To establish the crime of simple burglary, the State must prove beyond a reasonable doubt that the defendants, without authorization, entered the office of The Trading Post with the specific intent to commit either a felony or a theft therein. State v. Jones, 426 So.2d 1323 (La.1983); State v. Jacobs, 435 So.2d 1014 (La.App. 1st Cir.1983). Or, in the instant case, that one of the defendants entered the premises with the assistance of the other, who, under R.S. 14:24, became a principal to the burglary. A principal to a burglary need not enter the burglared building. State v. Miles, 464 So.2d 1126 (La.App. 3rd Cir.1985).
For the purpose of the burglary statute, "specific criminal intent" exists when the circumstances indicate that the defendant actively desired the prescribed criminal consequences to follow his act or failure to act. R.S. 14:10; State v. Dardar, 353 So.2d 713 (La.1977). See also State v. Smith, 463 So.2d 16 (La.App. 5th Cir.1985). Intent, being subjective in nature, need not be proven as a fact; it may be inferred from the circumstances of the transaction. R.S. 15:445; State v. Dickerson, 353 So.2d 262 (La.1977); State v. Smith, supra.
In the instant case, the defendants contend that the State failed to prove that either Brown or Nelson made an unauthorized entry into The Trading Post, and, therefore, their convictions must be reversed. That there was an unauthorized entry was established by Officer Geisinger's testimony that one of the windows to the building had been forcibly entered and by Mr. Wilkinson's testimony that the main office had been "broken into" and that a television, a public address system, some keys, and a car, which were in the building and on the premises when he locked up the previous evening, were missing. It would appear that this evidence is sufficient to establish that an unauthorized entry occurred. See State v. Miles, supra.
The State sought to establish that the defendants made the unauthorized entry by introducing testimony that Nelson was loitering outside the closed business on a cold, damp, night; that he watched as Officer Geisinger drove past; that a short time later he and Brown were stopped as they walked down a street which ran adjacent to the fence of The Trading Post; and that Brown was carrying several sets of keys, some of which Mr. Wilkinson identified (on the scene) as those which were normally kept in a drawer in the main office.
None of the State's witnesses testified that they saw either of the defendants in the burglarized office or even within the locked compound. While Nelson and Brown were arrested on the road just outside the fence of The Trading Post, and Brown was carrying one key identified at trial by Mr. Wilkinson, mere possession of property stolen in a burglary does not create a presumption that the defendants committed the offense. State v. Jimmy Dean Brown, 445 So.2d 422 (La.1984); State v. Simpson, 447 So.2d 98 (La.App. 4th Cir. 1984).
*699 Furthermore, there is no indication of exactly when the burglary was committed. The defendants were detained at about midnight on a Sunday night, approximately thirty hours after the business had last been open. Of greater significance is the fact that Mr. Wilkinson testified that a television, a public address system, and a car were stolen that night, yet the defendants were not found in possession of any of these items. The failure to recover these items from the defendants, who were apprehended just outside the premises, indicates that they did not steal them and further suggests that someone else may have committed the break-in during the thirty-hour time span. This hypothesis was advanced by counsel for Brown, who went on to argue that the persons who broke in grabbed all the keys and, upon finding the one which fit the Buick, discarded the other keys. He speculated that Brown may have picked up the keys on the street. Equally mystifying is how the car was removed from the compound. Mr. Wilkinson and Officer Geisinger testified that the gate to the six foot fence was locked and defendants were not in possession of the car.
In addition, the conduct of both defendants, in our opinion, was completely inconsistent with that of guilty men who had just committed a burglary. It is evident from the record that defendant Nelson observed Officer Geisinger pass him as he stood outside The Trading Post lot and turn down Oxley Street. Surely, Nelson must have suspected that the policeman may be suspicious and was circling the block. Logic dictates that, under these circumstances, guilty burglars would have hidden, run, or, at the very least, disposed of any suspicious or incriminating items. Instead, less than a minute later, Officer Geisinger was back and spotted the two men calmly walking down the street with the "incriminating" car keys swinging from Brown's hand in plain view.
We find this case directly on point with the case of State v. Jimmy Dean Brown, supra, wherein the Supreme Court stated:
At one time there existed in Louisiana a judicially created presumption that a person in possession of recently stolen property in a burglary was presumed to have committed the offense. However, the case of State v. Searle, 339 So.2d 1194 (La., 1976) repudiated the presumption with language which is equally appropriate here:
"... Therefore, we hold that our judicially created presumption that a defendant found in possession of property recently stolen in a burglary is presumed to have committed the burglary does not meet the beyond-a-reasonabledoubt standard, and that defendant consequently was adjudged guilty without requiring that the State prove beyond a reasonable doubt every essential element of the crime charged." 339 So.2d at 1206. [...]
In the case on appeal no rational trier of fact could have found the element of unauthorized entry beyond a reasonable doubt. [...] The evidence fails markedly to prove the element of unauthorized entry beyond a reasonable doubt. The case does not involve merely, as counsel argued to the jury, a credibility call between defendant and his two companions. The state's case fails when it is understood that there must be evidence to link defendant with the unauthorized entry. His possession of the stolen television [in this case KEYS] does not satisfy this requirement.
Accordingly, for the reasons stated, we reverse and set aside the defendants' convictions and sentences and order that they be discharged.
Having so found, it is unnecessary for us to address any other of defendants' alleged errors.
REVERSED.